‘GEORGE H. SALISBURY *v.* R. W. CLARKE, ADMR.,
ET AL.

*Trust; when Created under R. L. s.* 1933. *Voluntary Deed
without Consideration upon Parol Agree-
ment will not Create.*

1. Where the orator conveyed real estate to the intestate, who gave her
   note for the purchase price, and executed a lease at the same time for
   ten years, reserving a rent equal to the interest on the note; it being
   mutually agreed at the time that the rent should offset the interest,
   and that if either party died within the life of the lease all the papers
   then executed should be annulled, *held*, that a written instrument exe-
   cuted by the intestate at that time and setting up the above facts did
   not create a trust under R. L. s. 1933.

2. The written instrument which creates a trust under this section must
   show with sufficient certainty the objects and nature of the trust.

3. In case of a voluntary deed, importing a consideration upon its face, and
   for the beneficial use of the grantee, made deliberately, without fraud,
   mistake or connivance, parol evidence is not admissible to show that
   the deed was really without consideration, and that the grantee agreed
   verbally to hold the premises in trust for the grantor.

4. A court of equity would not decree a reconveyance of the premises under
   such circumstances.

5. In such a case, evidence that the grantee is in mean circumstances, and
   not able to pay the consideration, is not evidence to show a trust in
   the grantee.

Bill in chancery brought to declare the title of the orator to
·certain real estate, which he claimed the intestate of the defend-
ant Clarke held in trust for him. The heirs of the intestate
were the orator, who was her brother, and the children of a
·deceased sister, who were the other defendants in the suit.
Heard at the September Term, 1887, on bill, answers, master's
report, and exceptions thereto. Ross, Chancellor, dismissed the
bill, *pro forma.* From this decree the orator appealed.

The following facts appeared from the report of the master:

The premises in question were a tract in the town of Sears-
burg, county of Bennington, and premises on Main street, in
the village of Brattleboro, known as the " brick block." No

question was made on the trial as to the premises in Searsburg, the orator waiving his claim thereto. The property on Main street was purchased with the avails of other property in Brattleboro known as the Hall property.

The orator was the brother of the intestate, Lestina. In 1866, she conveyed what property she then had, which was but a small amount, to the orator on condition that the orator should support her during the remainder of her life. From this time she continued to reside in the family of the orator and to be supported by him, and the orator was permitted to show, subject to the exception of the defendants, that from this time until her death she did not have or acquire from any source any property whatever, and that at the time of her death she had no property except that claimed to have been held in trust and her personal wardrobe, which was appraised at about $32.

In 1869 the orator built an expensive house upon the Hall property, to which he then held the fee, and in 1870 he conveyed this property by deed quit-claim to the intestate for the consideration named in the deed, of $10,000. On the same day the intestate gave to the orator her promissory note for a like sum, and executed the writing set forth in the opinion of the court. This property was sold by the orator and conveyed by the intestate in 1876, and immediately afterwards the orator conveyed the brick block to the intestate for an express consideration of $7,000.

The orator claimed in his bill that at the time of these conveyances to the intestate, he had lost heavily by the depreciation in real estate, was somewhat given to the use of intoxicating liquor, and had made these transfers to her without any consideration and for the purpose of securing to himself, his family and the intestate a home and comfortable support, it being mutually understood between himself and the intestate that she had no interest in the premises, and held the title merely as his trustee.

With reference to this claim of the orator, the master found, from evidence introduced subject to the objection and exception of the defendants, " that all the conveyances by the orator

to her since that time, 1866, including the conveyance of the
Hall place and the brick block, were made without consideration,
except his agreement for her support, and were made for some
or all of the reasons stated in the orator's bill of complaint. ,

" That during all the time from Sept. 10, 1866, to the date of
said Lestina's death, the orator used and managed said property
as his own, both while the title thereof was in himself and in
said Lestina, paying interest on all mortgages accruing thereon,
all taxes assessed thereon, and occupying and receiving the rents
and income thereof, and that said Lestina acquiesced in such
payments, use and occupancy, and recognized and admitted his own-
ership of said property.   I find the fact of such use and occupancy
and  of the admissions of ownership by her from her diary
entries, and other parol  evidence above referred to, which was
received  subject to defendant's objection, and not from any
writing signed  by her.   Aside from the evidence thus referred
to, no written evidence was received as evidencing a trust either
in the 'brick block ' or 'Searsburg land.' "

*Haskins & Stoddard*, for the orator.

The  writings of July 30th, 1870, created a trust in said Les-
tina, of the High street real estate. The intention of the parties,
as shown by said writings, was to save unto the orator the *equit-
able*, and at the same time  vest in his sister the *legal* estate.

Letters or papers, however informal, are sufficient to consti-
tute a declaration of trust. *Ames* v. *Ashley*, 4 Pick. 70; *Scitu-
ate* v. *Hanover*, 16 Pick. 222; *Burrell* v. *Joy*, 16 Mass. 221;
*Urann* v. *Coates*, 109 Mass. 581; *Faxon* v. *Folvey*, 110 Mass.
393; *Montague* v. *Haynes*, 10 Gray, 609.

The master finds that a portion of the orator's funds arising
from the sale of the High street property, went into the brick
block upon Main street.   The trust which existed in the former
then became transferred, and attached to the latter premises.   A
trust once established may be pursued and traced into other
property by parol evidence. 1 Per. Tr. pp.  143-156 ; Hill Tr.
p. 148, note p. 155 ; *Lench* v. *Luch,* 10 Ves. 517; *Cripp* v. *Jee*,

4 Bro. Ch. 472; 4 Kent, 334; Sto. Eq. Jur. s. 1258; *Taylor* v. *Taylor*, 1 Atk. 447; *Clark* v. *Clark*, 43 Vt. 685.

Having established a trust by written evidence, and having pursued and attached the same to the Main street premises, the law raises a trust in favor of the party who pays for the same, as against the orator's voluntary conveyance of January 12th, 1876.

The absolute deed which the said Lestina held has been shown, by proper evidence, to be inconsistent with the facts and contrary to the interests of the parties. Consequently, parol evidence was admissible to show the real nature of the trust created. 1 Per. Tr. p. 65.

A constructive trust may be shown by parol evidence.

The mean circumstances of said Lestina were such as to make it impossible for her to be the owner. Therefore, parol evidence was admissible to show the trust. *Willis* v. *Willis*, 2 Atk. 71.

Parol evidence was admissible on the ground of fraud. The answer made by said Lestina's heirs to the orator's bill shows constructive fraud, because they seek to conceal the truth and establish that which is false. 1 Per. Tr. pp. 196-197.

*C. S. Eddy, E. L. Waterman* and *J. M. Tyler*, for the defendants.

This is the case of an absolute, voluntary deed, and parol evidence is not admissible to contradict or vary its terms.

There has never been any writing signed by either orator or Lestina declaring or acknowledging a trust. Therefore, no trust could be shown. R. L. s. 1933.

This deed contained an *habendum* declaring the property held to the use of said Lestina, her heirs and assigns forever, consequently no trust can result, as it is a rule that when a use is declared, no other use can be shown to result. Also, this was a deed of warranty, and the orator is estopped from claiming any legal or beneficial use or interest in the estate. 1 Per. Tr. s. 162 and cases there cited.

The consideration expressed in the deed cannot be denied for the purpose of showing a resulting trust in the grantor. *Henderson* v. *Henderson*, 13 Mo. 151; *Hollocher* v. *Hollocher*, 62 Mo. 273; *McConnell* v. *Brayner*, 63 Mo. 463; *McCrea* v. *Purmort*, 16 Wend. 475; *Farrington* v. *Barr*, 36 N. H. 86; *Kimball* v. *Walker*, 30 Ill. 511.

Where only a part of the consideration is paid by a person other than the grantee, no trust arises, unless such payment is for an aliquot part of the property conveyed. *Olcutt* v. *Bynum et al.*, 17 Wall. 44-64.

The opinion of the court was delivered by

TAFT, J. The orator claims that the intestate Lestina D. held certain real estate in trust for him. No claim is now made as to the land in Searsburg. The controversy is limited to the Main street property in Brattleboro, which he claims that he can hold, first upon the ground that he has traced into it the funds arising from the sale of the Hall property on High street, which latter property she held in trust for him, as he claims. It is necessary, therefore, to inquire whether he has established a trust in the latter. On the 30th of July, 1870, the orator owned the property, and on that day by deed of quit-claim conveyed it to Lestina for the consideration of ten thousand dollars, for which she gave the orator her promissory note payable on demand with annual interest. As a part of the same transaction the parties executed a contract, of which the following is a copy:

"BRATTLEBORO, July 30, 1870.

"Whereas, George H. Salisbury has this day executed his deed of quit-claim of certain real estate in Brattleboro to Lestina D. Salisbury, in consideration of which the said Lestina D. Salisbury has executed and delivered her promissory note to the said George H. Salisbury for the sum of ten thousand dollars, payable on demand with interest annually.

"And whereas, the said Lestina D. Salisbury has this day executed a lease to the said George H. Salisbury of said premises

for the term of ten years, reserving an annual rent of six hundred dollars. Now it is hereby mutually understood and agreed that the rent reserved in said lease shall be annually set off against the interest accruing on said note, and that upon the decease of either of the parties to this agreement, should that event happen during the term for which said lease is given, all the papers this day executed and delivered shall be cancelled, surrendered and held for naught, and that the administrator or executor of the deceased party shall make and deliver to the party surviving such deeds or other instruments in writing as may be effectual for the purpose of restoring the parties and their personal representatives to the same condition, and with the same rights and obligations that existed before the execution of said deed, note and lease."

The contract was sealed and executed in the presence of a witness, and the orator insists created a trust in the said Lestina in the High street property. Sec. 1933, R. L., reads: "No trust concerning lands, excepting such as arise or result by implication of law, shall be created or declared, unless by an instrument in writing, signed by the party creating or declaring the same, or by his attorney." Did the writings create or declare a trust? Upon the face of them it shows a sale of the real estate to Lestina, and a payment for it by her giving a note for its value. The orator remained in possession of the estate, the rent offsetting the interest upon the note. The contingency, upon the happening of which the contracts evidenced by the writings were to be annulled, never happened; neither party deceased during the life of the lease ; prior to its termination the property was sold. What became of the ten thousand dollar note does not appear. The effect of the papers of July, 1870, was to convey to Lestina the orator's property, a leasing of the same by her to him, for ten years at an annual rent, a payment of it by said Lestina, by her note for ten thousand dollars, with an agreement that all the papers then executed in relation to said property should be annulled upon the decease of either of the parties during the life of the lease. If the property was recon-

Salisbury *v.* Clarke.

veyed to him he must surrender to Lestina or her administrator the ten thousand dollar note. Now while it is true that a trust may be created or declared by a writing of an informal nature,. *e. g.*, a letter, receipt, answer in chancery, deposition, a recital in a deed, a memorandum of almost any kind, still the objects and nature of a trust must always appear from such documents. with sufficient certainty. Nothing in the papers indicates that. the orator was to have the use of the property or the property itself, except upon payment of what appears to have been a reasonable consideration. He was entitled to the use of the property upon the payment of rent, and in case of a re-conveyance to him, within ten years, he was to pay for it by surrendering the note against Lestina for ten thousand dollars ;. and after the expiration of the lease both parties remaining alive, his interest in the property ceased in every respect. We cannot hold that a trust was created or declared by the papers. executed in July, 1870, without doing violence to the language of the papers as well as the evident meaning thereof. He was to have the property only upon payment of its value. Second :. No trust in the High street property having been created nor declared by Lestina, in writing, did one either in that or in the Main street property arise or result by implication of law ? The orator was the owner of the lands and conveyed them to Lestina. for the expressed consideration of ten thousand and seven thousand dollars respectively, with an *habendum* in case of the Main street property to the said Lestina D., her heirs and assigns, to her and their own proper use, benefit and behoof forever. Parol evidence was not admissible to show that there was, in fact, no consideration and that Lestina agreed by parol to hold the lands for the orator. It is the case of a voluntary deed which on its face purports to be upon consideration and for the beneficial use of the grantee, made deliberately, without. fraud, mistake or contrivance. Such a deed can only be attacked by one having superior equities—like a creditor.

The authorities are decisive and uniform that the doctrine of resulting trusts has never been applied in such cases. Third :.

It is further claimed by the orator that parol testimony is admissible to show the trust from the mean circumstances in the pretended owner of the real estate or inheritance which makes it impossible for him to be the owner. Upon this question *Willis* v. *Willis*, 2 Atkins, 71, is cited. That case is meagerly reported; no facts are stated, and we think the eminent Lord Chancellor Hardwicke is merely stating that upon the question arising in a case where it is claimed that the purchase money has been paid by one party and the conveyance taken to another, which seems to have been the question in the case, that the grantee is in impoverished circumstances, may be given in evidence to show who paid the consideration, not that a trust necessarily results. The fact that a pauper pays thousands of dollars upon the purchase of property is more likely to be accounted for upon the theory that he is acting for a third party than for himself. This rule of evidence upon the question of who paid the consideration is recognized in 1 Perry on Trusts, 137; Hill on Trustees, 94; *Wilkins* v. *Stevens*, 1 Y. & C. 431; *Strimpfler* v. *Roberts*, 18 Pa. St. 283; *Ryal* v. *Ryal*, cited in *Lane* v. *Digelton*, 1 Ambler, 413.

We are further asked by the orator to hold that if Lestina had refused to re-convey the premises to the orator and claimed absolute ownership in the premises, it would have been a fraudulent act on her part from which a court of equity should grant relief. But the rule above stated in case of voluntary conveyance upon expressed consideration is too well and has been too long settled to be now departed from.

*Decree affirmed and cause remanded.*