JOHN SASSENBERG et al.

v.

JOHN H. HUSEMAN et al.

*Opinion filed October 16, 1899—Rehearing denied December 8, 1899.*

1. EVIDENCE—*what evidence will not overcome notary's certificate.* A notary's certificate that a married woman, upon examination separate and apart from her husband, acknowledged the execution of a deed, is not overcome by the husband's testimony, based only on recollection, that his wife was not present when he signed the deed, or by the evidence of two interested witnesses that the signature does not resemble the wife's handwriting.

2. DEEDS—*grantor's failure to assert ownership for over thirty years tends to support validity of deed.* Failure of one who conveyed premises to assert any claim thereto for over thirty years tends to establish the validity of the deed, and that it was executed with the understanding that all the grantor's interest passed by it.

3. SAME—*deed construed as passing land described subject to dower interest of third person.* A deed, the granting clause of which describes one hundred and twenty acres of land but excepts the grantors' interest in forty acres of the land set off, or which might be set off, to a third person as dower, expressing an intent to convey the grantors' interest in the eighty acres and in the widow's dower, passes the one hundred and twenty acres subject to such dower.

4. SAME—*habendum clause may be read in connection with granting clause to explain ownership.* While the *habendum* clause cannot be regarded as the deed if clearly repugnant to the grant, yet it may be read in connection therewith, as defining the extent of ownership in the thing granted, where the granting words leave the subject of such ownership open to explanation.

APPEAL from the Circuit Court of Bureau county; the Hon. HARVEY M. TRIMBLE, Judge, presiding.

Appellants filed their bill asking for partition of certain lands in Bureau county, containing one hundred and twenty acres, described as the north half of the northeast quarter of section 1, township 17, north, range 7, east, known as lot 2, upon the east half of which were situated the homestead improvements, and the east half of the south half of said north-east quarter of section 1, known as lot 1, which they claimed their mother owned

as tenant in common with appellees, claiming the appellees owned an undivided two-thirds and their mother to have owned an undivided one-third of the property. Appellees claimed to be the owners of all the property in fee by descent and chain of conveyance as follows, proved at the hearing: Joseph Bulfer, Sr., died August 24, 1861, intestate, the owner of and occupying the premises in controversy, leaving his widow, Theresa Bulfer, and Joseph Bulfer, Jr., a son, and Magdalena Sassenberg (*nee* Bulfer) and Maria Ann Bulfer, daughters, his only heirs-at-law. On October 19, 1863, Maria, one of the daughters, conveyed all her interest in the land to her brother, Joseph Bulfer, by special warranty deed. On the 15th day of October, 1863, Magdalena Sassenberg, the other daughter, together with Peter Sassenberg, her husband, quit-claimed her interest to her brother, Joseph, for $150. After the death of Joseph Bulfer, Sr., the widow continued to retain the actual occupancy of the land, her son, Joseph, residing with her, until October, 1869, when Joseph Bulfer and his mother conveyed the land by warranty deed to George Fenn, who resided on the land from that time till his death, in 1880, intestate, leaving surviving a widow, Fredericka Fenn, and a number of children, including Anna H., the wife of John H. Huseman, being the appellees herein, who subsequently acquired all the interests of the widow and the other children, and were at the time of the filing of the bill in possession. Appellants are the children of Magdalena Sassenberg, who died in 1894, intestate, Peter Sassenberg, her husband, surviving her. Her estate was never administered.

Appellants, by amendment to their bill, made after partial hearing, say that after the coming in of the answer they have learned that the Husemans claim to be the owners in fee of Magdalena's one-third in the one hundred and twenty acres of land in controversy by quit-claim deed from her and her husband to Joseph Bulfer, and aver that such pretended deed, if any they have, is

false and fraudulent; that the defendants, or some of them, have a writing purporting to convey the interests of one Peter Sassenberg and Helena Sassenberg, his wife, in eighty acres of said land, specially excepting their interest in forty acres of said lands, which said instrument appears of record in book 38, at page 70, of records of the recorder of Bureau county; that when said writing was recorded it purported to be executed by Peter Sassenberg and Helena Sassenberg, his wife; that the name of Magdalena Sassenberg nowhere appeared on said pretended deed of conveyance as a part thereof, and that since the recording thereof the said Husemans, or some one for them, have fraudulently, as against the rights of complainants, altered and changed the signatures, changing the words "Helena Sassenberg" by erasing and removing the same and fraudulently inserting in lieu thereof the words "Magdalena Sassenberg;" aver that the certificate of acknowledgment is false and was the result of fraudulent collusion between the notary and Joseph Bulfer, Jr., the grantee therein named; aver that Magdalena never conveyed her interest in said lands, never signed said pretended deed and never acknowledged the same; that the said instrument as it now appears, with the pretended signature of Magdalena, is a forgery; that the pretended deed was, by reason of the said alteration, wholly invalid and inoperative as a conveyance of title at any time since its alteration aforesaid, and never was a deed of conveyance of title of said Magdalena to said lands or any part thereof, and should be surrendered for cancellation; aver further that Magdalena never received the $150 named as the pretended consideration; that there was no consideration for the deed, and that George Fenn had notice of such want of consideration.

The amended answer of the Husemans admits they claim title to the one-third interest of Magdalena in all of said lands through said quit-claim deed to Joseph Bul-

fer, Jr., the grantor of George Fenn, and specifically deny each and every other allegation, in detail, in the amendment. They aver the deed to be good and valid, acquired in good faith, and now without alteration; that Magdalena did receive the $150 purchase price named in the deed made by herself and Peter, her husband, and aver that the defendants are owners in good faith, as purchasers of said lands for value, without notice of any defect in title to said lands in the parties from whom they obtained the same. The court dismissed the bill on hearing, and complainants prosecute this appeal.

FRED T. BEERS, for appellants.

C. H. WOOSTER, IRA C. GIBONS, and GEORGE S. SKINNER, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The deed from Magdalena Sassenberg and husband to Joseph Bulfer, the validity and effect of which constitute the principal controversy in the suit, is as follows:

"This indenture, made this fifteenth day of October, in the year of our Lord one thousand eight hundred and sixty-three, between Peter Sassenberg and Hellena, his wife, of the city of Peru, LaSalle county and State of Illinois, parties of the first part, and Joseph Pulver, of the county of Bureau and State of Illinois, party of the second part:

"*Witnesseth:* That the said party of the first part, for and in consideration of the sum of $150 in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged and the said party of the second part forever released and discharged therefrom, have remised, released, sold, conveyed and quit-claimed, and by these presents do remise, release, sell, convey and quit-claim, unto the said party of the second part, his heirs and assigns forever, all the right, title, interest, claim and demand which the parties of the first part have in and to the following described lot, piece or parcel of land, to-wit: The north half ($\frac{1}{2}$) of the north-east quarter ($\frac{1}{4}$) and the south-east quarter ($\frac{1}{4}$) of said north-east quarter ($\frac{1}{4}$) of section one (1), town seventeen (17), north, range seven (7), east of the fourth (4th)

principal meridian, except their interest in forty acres of said land, being the forty acres, one-third part of said land, which may be set off to Theresy Pulver, widow of Joseph Pulver, deceased, or which may belong to her as her dower in said lands. It is intended by this deed to convey only said parties' interest in eighty acres of said land and their interest in the widow's dower. To have and to hold the same, together with all and singular the appurtenances and privileges thereunto belonging or in anywise thereunto appertaining, and all the estate, right, title, interest and claim whatever of said party of the first part, either in law or equity, to the only proper use, benefit and behoof of the said party of the second part, his heirs and assigns forever.

"In witness whereof the said party of the first part hereunto set their hands and seals the day first above written.

PETER SASSENBERG,        [Seal.]
MAGDALENA SASSENBERG.    [Seal.]"

Julius Heinrich, a notary public for LaSalle county, certifies the acknowledgment of the deed by Peter Sassenberg and Magdalena Sassenberg, and the examination of Magdalena separate and apart and out of hearing of her husband, and her acknowledgment to be the free and voluntary execution of the same without compulsion of her husband, and the relinquishment of her dower in the form of acknowledgment then prescribed. The date of the acknowledgment is October 15, 1863, and it is sealed with the notarial seal of the notary. The deed bears the certificate of the recorder, showing that it was filed for record October 19, 1863, at twelve o'clock noon, and was recorded on page 70 of book 38.

The complainants objected to the admission of this deed for various reasons, principal among which were these: that the deed was a forgery, because after its recording it had been altered; because it purports to convey the fee of Peter Sassenberg, his wife joining, whereas it is the fee interest of Magdalena which is in controversy, and the defendants are estopped from showing title in fee to any person other than Magdalena Sassenberg; that it is not the deed pleaded; because the deed purports to convey only eighty acres instead of one hun-

dred and twenty acres; because its execution was not proven as required by law; because, the deed and the record thereof being different, the deed as altered is wholly incompetent and inadmissible as a legal instrument by which to prove title; and because the record of the deed shows the deed was signed by Helena, that being the only genuine signature it ever had, and as such it is irrelevant and incompetent to pass title of Magdalena's interest. The deed was introduced in evidence over the above objections, whereupon complainants introduced the record, with proof of no erasure thereof and being identical with the original deed above set forth, except the second signature is that of "Hellena Sassenberg."

On the hearing Joseph Bulfer testified, for the defendants, that he farmed the one hundred and twenty acres in question for about nine years after his father's death, in 1861, and it was stipulated by the complainants that the parties in possession had paid the taxes on the land ever since the death of Joseph Bulfer, Sr. The above deed being shown, the witness identified it, and stated that the deed was drawn in Peru, Illinois; that he bought the land from Sassenberg, and that both he and his wife, Magdalena, were present when he bought it; that he bought the whole one hundred and twenty acres of land, and that if the scrivener made a mistake of any kind it was not his fault; that both Peter Sassenberg and his wife (witness' sister) were present in the office and acknowledged the deed before the officer; that the officer asked her if she was satisfied, and that she signed the deed, and that after she signed it she acknowledged it. Witness stated further that Mr. Fenn, the person to whom he sold in 1869, had remained in possession of the land ever since, up to the time of his death; that the $150 called for by the deed to him he sent to her about a year after he got the deed, by a man named Yager, and that Peter Sassenberg told him afterwards that she had received it; that Magdalena never lived on the land after-

wards. He does not remember who the scrivener was, or the name of the notary, or the office where the papers were executed or acknowledged, but says that Peter Sassenberg selected the scrivener,—that he knew nobody in the town.

Peter Sassenberg, called for complainants, remembered the deed when shown him, and that it was made out by George D. Ladd, and swore that his wife was not present when the deed was made; that he had not intended to sell to Joseph anything but the eighty acres; that the signature at the bottom purporting to be that of his wife looks something like her handwriting, but he does not think she signed it; that he never saw her sign the deed; that his wife wrote her name "Mary Magdalena," and was so christened; that she had nothing to do with the sale of the land, and that the consideration was paid to him—not to her.

Anna Wacker, one of the complainants and daughter of Magdalena Sassenberg, testified she was familiar with her mother's handwriting, and that the name "Magdalena Sassenberg," at the bottom of the deed, was not in her handwriting. The son testified that his mother said to him at the time she was to sign a deed shortly before her death, that that was the first deed she had ever signed. This testimony was objected to, on the ground that the witnesses were incompetent to testify. Two witnesses for the complainants testified that they had known Joseph Bulfer, Sr., and his family, and that Magdalena always went by the name of "Lena" and was not called "Magdalena."

The evidence in this case is far from sufficient to overcome the effect of the notary's certificate of acknowledgment of the deed in question by Magdalena Sassenberg. At the time this case was heard that deed was thirty-two years old and had been on record all of that time. Taxes were paid regularly. The possession of the defendants, or those from whom they claimed, was actual, open, no-

torious and continuous, and, from all that appears in the record, exclusive and adverse.

The appellants contend that the possession of the appellees, and those through whom they held, being under the deed in which Theresa Bulfer, widow of the original ancestor, joined, and who was then entitled to dower and homestead, is not inconsistent with the rights of Magdalena as tenant in common, and that the Statute of Limitations would not run against her. It is no doubt the law that as between tenants in common possession of one is possession of all, and that the Statute of Limitations will not begin to run until the actual possession is made, by open, notorious and visible acts, to become adverse to the rights of the co-tenants. But the dower of the widow of Joseph Bulfer, Sr., seems, by common understanding between her and the heirs, to have been regarded as in one forty-acre tract only, and, independently of the deed in question, it is probable that had Magdalena claimed any interest in the one hundred and twenty acres she would have asserted it long before her death, and as soon as her mother abandoned the premises and they passed into the possession of strangers. Her never having asserted any claim in any way by her acts is consistent with the validity of the deed in question, and that it was executed by her with the understanding that all her interest passed by it.

None of the facts and surrounding circumstances of this case tend to impeach the Sassenberg deed, but rather to support it. No fraud, collusion or imposition on the part of the officer taking the acknowledgment is sought to be shown. There was testimony, based only on recollection, of the husband that his wife was not present when the deed was executed by him, and of two other witnesses who are directly interested, who say the writing does not resemble the handwriting of their mother. That she was not present is not inconsistent with the notary's certificate that she was examined separate and

apart from her husband, in the form of acknowledgment then required by law. In *Russell* v. *Baptist Theological Union,* 73 Ill. 337, this court held that the acknowledgment of a deed cannot be impeached for anything but fraud, and that the mere evidence of the party purporting to make the acknowledgment cannot overcome the officer's certificate, nor that such evidence slightly corroborated will overcome it. In *Kerr* v. *Russell,* 69 Ill. 666, it was held that the certificate of the acknowledgment of a deed by the wife may be impeached, but that the proof to sustain such charge must be of the clearest, strongest and most convincing character, and be by disinterested witnesses.

The private examination of the wife by the notary, as was required by the law at the time of the making of the deed, was designed as a substitute for and of equal dignity with the proceeding at common law by fine and recovery, and to protect and guard the rights of the wife, and to render sure, indefeasible and unquestionable the title of the grantee. To permit evidence of the character presented by this record to overturn titles to real estate conveyed under the formalities of the law, after the lapse of thirty-three years, would tend greatly to produce insecurity, uncertainty and confusion as to land titles, and to open the door for perjury and fraud. Questions of this kind have been frequently before this court, and while it has never refused or denied the right to impeach the certificate of acknowledgment, it has uniformly held that the proof to authorize the same must be clear, cogent and convincing. *Calumet and Chicago Dock Co.* v. *Russell,* 68 Ill. 426; *Kerr* v. *Russell, supra; Heacock* v. *Lubuke,* 107 Ill. 396; *Russell* v. *Baptist Theological Union, supra.*

The appellants contend that the deed conveyed only eighty acres of land, and that the provision after the description of the forty-acre tract, "except their interest in forty acres of said land, being the forty acres, one-third part of said land, which may be set off to Theresy Pulver, widow of Joseph Pulver, deceased, or which may belong

to her as her dower in said lands; it is intended by this deed to convey only said parties' interest in eighty acres of said land and their interest in the widow's dower," excluded from the deed forty acres of the tract absolutely, and that as to forty acres there was an absolute exception from the deed as a conveyance. The granting clause of the deed describes one hundred and twenty acres of land, and had the parties intended to convey only eighty acres there is no reason why only such description of eighty acres of land should not have been written into the deed. The manifest intention of the parties was to recognize the rights of the widow to dower in the one hundred and twenty acres, and not to exclude or conclude her in any way. The very clause of the exception shows that it was the intention of the parties not only to convey the eighty acres of land, but the grantors' interest in the widow's dower, which the deed shows was regarded and treated as belonging to the widow.

While the *habendum* clause cannot be regarded as the deed if clearly repugnant to the grant, yet it may be read in connection therewith, as defining the extent of ownership in the thing granted, where the granting words leave the subject of such ownership open to explanation; and in this case that clause strengthens the construction we have above given. In the case of *Crosby* v. *Montgomery*, 38 Vt. 238, the administrator sold the estate of his intestate after his wife had her dower set off, and described the premises by metes and bounds, excepting the widow's third of so many acres set off on the west side of the tract, and it was held to be an exception of her life estate in that part of the tract, and not so much of the tract itself in fee.

We have not deemed it necessary to pass upon the competency of the witnesses as raised by the objections in this case, as it is clear that the decree of the circuit court of Bureau county was correct, and the decree is affirmed.                    *Decree affirmed.*